## UNITED STATES DISTRICT COURT
## OF MINNESOTA

T. S.,

      Plaintiff

v.

WYNDHAM HOTELS & RESORTS, INC. f/k/a
WYNDHAM WORLDWIDE CORPORATION,
d/b/a SUPER 8 HOTEL AND SARAH
HOSPITALITY, INC.,

      Defendants.

Case No.

## PLAINTIFF'S ORIGINAL COMPLAINT

1.      Comes now, Plaintiff, T. S., and files this Plaintiff's Original Complaint against Defendants, Wyndham Hotels & Resorts, Inc., d/b/a Super 8 Hotel and Sarah Hospitality, Inc., d/b/a Super 8 Brooklyn Center and for cause of action would show the Court as follows:

## BACKGROUND

2.      Sex trafficking has grown to epidemic proportions, and it has become widely recognized that we must look beyond just the pimp and sex buyer in order to stop sex trafficking. We must look to the other individuals and entities who facilitate and benefit from sex trafficking.

3.      The facilitation of sex trafficking is unlawful under federal law. The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, *et seq*, expands trafficking liability beyond the sex broker and buyer to also prohibit individuals or entities from knowingly benefiting "financially or by receiving anything of value from participation in a venture which that person knew or should have known" was engaged in trafficking.

4.      As discussed herein, Defendants derived financial benefit from facilitating sex trafficking by providing venues where traffickers could exploit victims, including minor victims

like Plaintiff, T.S., with minimal risk of detection or interruption. Defendants continued supporting traffickers, including Plaintiff T.S.'s trafficker, despite evident and apparent signs of widespread and ongoing sex trafficking in these hotels. Defendants were, therefore, knowingly receiving a benefit from participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

5.      The motivation behind each Defendant's ongoing willful blindness and ongoing failure to act is plain and simple –pure corporate greed; each Defendant herein ignored all of the signs of and/or solutions to human trafficking out of an unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

6.      This case involves the sex trafficking of a female only 15 years of age at the time, Plaintiff, T.S., that occurred at the Wyndham Super 8 Brooklyn Center Hotel located 6445 James Circle N., Brooklyn Center, Minnesota ("subject Super 8 Wyndham Hotel").  The subject Super 8 Wyndham Hotel was owned, managed, controlled and/or operated by Defendant Wyndham Hotels and by Defendant Sarah Hospitality, Inc., d/b/a Super 8 Brooklyn Center ("SHI"), as a franchisee of Wyndham Hotels & Resorts, Inc, f/k/a Wyndham Worldwide Corporation at the time of Plaintiff's sex trafficking.

7.      As discussed herein, each of the defendants in this case knowingly benefitted from facilitating T.S.'s trafficking at the subject Super 8 Wyndham Hotel.  Accordingly, T. S. brings suit under the TVPRA.

## JURISDICTION & VENUE

8.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

10.     As a separate and additional remedy for those exploited as children, in 18 U.S.C. § 2255, Congress authorized any person who, while a minor, was a victim of a violation of 18 U.S.C. § 1591, to sue in any appropriate district court to recover damages. This provision authorizes nationwide service of process and nationwide jurisdiction.

11.     T. S. was trafficked as a minor child in this District.

## PARTIES

12.     Plaintiff, T. S. (DOB 5/15/1998), is a natural person who is currently a resident and citizen of Minnesota. Said Plaintiff was trafficked at the age of 15 at the subject Wyndham Super 8 Hotel.

13.     Plaintiff T.S. is a victim of sex trafficking under 18 U.S.C. §1591(a) because she was harbored, transported, or provided for the purpose of being caused, through force, fraud or coercion, to commit a commercial sex act.

14.     The trafficking of Plaintiff T.S. occurred in or affected interstate commerce.

15.     Given the nature of the allegations in this lawsuit, there is a collective and compelling interest in not publicly revealing the identity of Plaintiff T.S..

16.     Wyndham Hotels & Resorts, Inc., f/k/a Wyndham Worldwide Corporation, d/b/a Super 8 ("WYNDHAM HOTELS") is a Delaware corporation with its principal place of business located at 22 Sylvan Way, Parsippany, New Jersey 07054, is the "world's largest hotel franchising

company" and claims to "mandate human trafficking training for all company employees" within each of its hotel brands' individual franchise properties.

17.     Sarah Hospitality, Inc., d/b/a Super 8 Brooklyn Center ("SHI"), is a Minnesota corporation that did business as the Super 8 Brooklyn Center located at 6445 James Circle N. in Brooklyn City, Minnesota, during the period at issue.

18.     Wyndham Hotels & Resorts, Inc. and SHI are, at times, collectively referred to as "Wyndham", "Super 8 Defendants" and/or "Defendants" herein.

### STATEMENT OF FACTS

### The Hotel Industry's Role in Sex Trafficking

19.     The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what the Defendants knew or should have known regarding the trafficking at their hotel properties, including the trafficking of Plaintiff T.S.

20.     Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[1] For years, sex traffickers have "been able to reap these profits with little risk when attempting to operate within hotels."[2] In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[3] Hotels have been found to account for over 90% of commercial exploitation of children.[4]

---

[1] "This is not only a dominant issue, it's an epidemic issue." See Jaclyn Galucci, Human Trafficking is an Epidemic in the U.S. It's Also Big Business, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-us-slavery/ citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id.
[2] See Human Trafficking in the Hotel Industry, Polaris Project, February 10, 2016, at https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; see
also Eleanor Goldberg, You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic, Huffington Post, June 2016, at http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victims-life_us_57714091e4b0f168323a1ed7
[3] Michele Sarkisian, Adopting the Code: Human Trafficking and the Hotel Industry, Cornell Hotel Report, October 2015, at https://scholarship.sha.cornell.edu/cgi/vi ewcontent.cgi?article=1222&context=chrpubs Oct. 2015
[4] See Erika R. George and Scarlet R. Smith, In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).

21.     To address the crisis of sex trafficking at hotels, multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Minnesota Attorney General, Love 146, ECPAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[5]

22.     Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:[6]

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

- Individuals show signs of physical abuse, restraint, and/or confinement;

- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

- Individuals lack freedom of movement or are constantly monitored;

- Individuals avoid eye contact and interaction with others;

- Individuals have no control over or possession of money, ID or opportunity to speak for themselves;

- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

- Individuals have few or no personal items—such as no luggage or other bags;

- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

---

[5] https://www.dhs.gov/blue-campaign; United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking.Source:https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; https://www.missingkids.org/theissues/trafficking#riskfactors; https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf
[6] *See Id.*

- A group of girls that appears to be traveling with an older female or male;

- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

- Possession of bulk sexual paraphernalia such as condoms or lubricant;

- Possession or use of multiple cell phones;

- Possession or use of large amounts of cash or pre-paid cards;

- Rental of adjacent hotel rooms; and

- Declining of housekeeping services for consecutive days.

23.     All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

24.     The most effective weapon against sexual exploitation and human trafficking is education and training.[7] As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[8]

25.     This same conclusion is echoed by others who seek to eliminate or minimize sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel

---

[7] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).
[8] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.

employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[9] In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

26.     Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers *without* taking reasonable steps to identify and prevent trafficking in its hotels is a decision to financially benefit by supporting and facilitating unlawful sex trafficking.

27.     Defendants' public statements regarding trafficking confirm that they are aware of this problem in the hospitality industry.  Recognizing the unique vantage point that that hotel franchisor, franchisee and their staff have to identify potential human trafficking victims on their properties, several major hotel chains, including franchisors, franchisees, and owner/operators, have told the public they have accepted the unique opportunity and responsibility to stop facilitating sex trafficking.  In order to meet that responsibility, several (if not most) major hotel chains have adopted anti-human trafficking policies to train employees to identify and properly respond to the "red flags" of sex trafficking.  Each Defendant named herein had the opportunity and responsibility to adopt, implement, and enforce similar policies at the subject Wyndham Super 8 Hotel. Unfortunately for T. S., such policies of the Defendants were not in place or were not enforced at said hotel during the period in question when she was being sexually exploited as a

---

[9] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

minor child and such amounts to a violation of the TVPRA,  negligence, recklessness and/or willful dereliction of the duties Defendants owed to Plaintiff pursuant to said policies and the law.

**The Use of Super 8 Branded Properties for Sex Trafficking is Prevalent**

28.    The use of Super 8 hotels for sex trafficking is well known to Defendants.  Scores of news stories dating back for over a decade and prior to T. S.'s trafficking, highlight the Defendants' knowledge of such conduct.  Each Defendant knew, or should have known, of the use of Wyndham Super 8 branded hotels for sex trafficking. Even before the sex trafficking of Plaintiff at Defendants' subject hotel and continuing thereafter, are notable complaints that put the Defendants on notice of the frequent use of Wyndham Super 8 hotels, including the subject Wyndham Super 8 Hotel, for commercial sex and other illegal activity.  Below are some examples that show Defendants' were on notice of the fact that the subject Super 8 Wyndham Hotel was being used for sex trafficking,  commercial sex and illegal activity:

  a.  Customer complaint in June 2012 that the majority of the hotel's clientele were hookers, pimps and drug dealers;

  b.  Customer complaint in July 2012 regarding the drug and prostitution problem at the subject hotel;

  c.  Customer complaint in August 2013 of used condoms laying in the hallway;

  d.  Customer complaint in July 2015 by customer who was harassed by prostitutes;

  e.  Customer complaint in August 2015 stating that the subject hotel's only loyal customers were hookers and drug dealers;

  f.  Customer complaint in 2019 that described the subject hotel as a "prostitute infested hole".

29.    Upon information and belief, each of the Defendants monitored criminal activity occurring at its branded hotels and were aware of activity indicating commercial sex trafficking or related crimes occurring at those branded hotels, including the specific hotel properties where

Plaintiff T.S. was trafficked. Upon information and belief, each of the Franchisee Defendants monitored criminal activity occurring at the hotels they operated and other areas hotels and were aware of activity indicating commercial sex trafficking or related crimes.

30.    These examples and others, along with public news stories involving Wyndham Super 8 Hotels show a number of things:

    a.  The use of Wyndham Super 8 Hotels for sex trafficking was not isolated to one such hotel;

    b.  The use of Wyndham Super 8 Hotels for sex trafficking was not isolated to such hotels in one specific geographic region;

    c.  The use of Wyndham Super 8 Hotels for sex trafficking was a pervasive nationwide problem that stemmed from decisions at the top;

    d.  The use of Wyndham Super 8 Hotels for sex trafficking was occurring in Minnesota;

    e.  That Defendants knew or should have known that sex trafficking was occurring at the subject Super 8 Wyndham Hotel prior to the sex trafficking of the Plaintiff, and that long after the sex trafficking of Plaintiff, such conduct continued at said hotel despite Defendants' knowledge that Plaintiff was a victim of this illegal activity in 2013. Despite Defendants' actual and constructive knowledge of sex trafficking in the subject hotel before and after the sex trafficking of Plaintiff, Defendants continued to rent rooms to sex traffickers with actual and constructive knowledge that commercial sex was occurring in said rooms.

31.    Each Defendant knew of the sex trafficking crisis prevalent in the hotel industry generally, as well as specifically at Wyndham Super 8 branded hotels, including the subject hotel, and while Defendants claim not to tolerate such activity, the evidence shows and will show at trial that sex trafficking continued at the subject Wyndham Hotel frequently and long after the trafficking of the Plaintiff.

**T. S., a minor, Was Trafficked at the Wyndham Super 8 Hotel**

32.     One of the lives devalued and otherwise adversely affected by the Defendants' inattention to the prevention and eradication of sex trafficking at Wyndham Super 8 branded hotels was T. S., a 15-year-old female victim of sex trafficking.

33.     T. S.'s path to the subject Super 8 Hotel began when, as a 15-year-old girl, she was ensnared by sex traffickers who deceived her into thinking he planned to take care of her.

34.     After acquiescing to her traffickers demands under the constant threat of violence, she began to find herself forced to do increasingly depraved things, in increasingly depraved locations, such as the subject Super 8 Wyndham Hotel.

35.     Plaintiff was sold for commercial sex acts within and on the premises of the subject Super 8 Wyndham Hotel that was, at all relevant times, owned, operated, managed, supervised, controlled and/or otherwise held responsible by of the Super 8 Defendants.

36.     For example, during the period of August – December, 2013, including but not limited to the dates of September 10, 2013 – September 12, 2013, Plaintiff was sold for commercial sex acts in room 262 of the subject Super 8 Hotel in Brooklyn Center, Minnesota.  During said period, the Wyndham Super 8 Hotel agents, employees, managers, representatives and vice-principals had actual and/or constructive knowledge that T. S., a minor, was under 18 years of age, was being sex trafficked, prostituted, statutorily raped within the confines of said room that said Defendants provided, sold and profited from.

37.     Despite actual knowledge and belief that commercial sex was occurring in Room 262 of its subject Super 8 Hotel in Brooklyn Center, Minnesota, during the period at issue, Defendants', Wyndham Hotels and Sarah Hospitality, Inc., by and through their respective agents, managers, employees, representatives and/or vice-principals were actually aware of the sex

trafficking of Plaintiff, yet did nothing to stop said sex trafficking, sexual abuse and other atrocities that were occurring to T. S., a 15 year old child's mind and body as a victim of sex trafficking in the bed that said Defendants provided and profited from.

38.     Despite their knowledge and belief commercial sex was occurring in Room 262 rented by T.S.'s traffickers during the period at issue, Defendants' agents, employees, representatives, managers and/or vice-principals did not contact law enforcement to come to said room, arrest the wrongdoers and rescue Plaintiff from her sex traffickers and stop the ongoing criminal activity in said room that had been occurring for days.

39.     When law enforcement investigated the human trafficking of T. S., a minor, as part of its criminal investigation and prosecution of Plaintiff's sex traffickers, the Defendants' manager, agent, representative and/or vice-principal, admitted to law enforcement that Defendants had actual knowledge and belief that sexual trafficking and/or commercial sex was occurring in Room 262 where T. S. was located, yet did nothing to stop or discourage it from occurring, nor did they contact or report same to law enforcement at the time it was occurring so that it could be stopped and the minor child inside could be saved or rescued.  The St. Paul Police Department offense report stated that when the investigating officer went to the Super 8 Motel in Brooklyn Center on December 5, 2014, he spoke to the Super 8 Motel employee on duty (J.G.) who advised that T.S.'s traffickers had rented Room 262 during the period of September 10, 2013 through September 12, 2013, and that the hotel's record system indicated that a person under 18 was in the room and that hotel personnel believed it to be "prostitution related".

40.     The foregoing conduct occurred while Plaintiff T.S. was being sex trafficked at the Super 8 Wyndham Hotel from  September 10, 2013 through September 12, 2013, and, upon information and belief, the foregoing routine conduct, as it applies to sex trafficking not specific

to Plaintiff, also occurred for an extended period before said atrocity involving Plaintiff and for years thereafter.

41.     The Defendants, acting by and through their agents, managers, vice-principals and employees, were not motivated to act to reduce or eliminate the human sex trafficking in the subject Super 8 Wyndham Hotel, despite the obvious signs of sex trafficking and commercial sex taking place there because said Defendants were actively engaged in facilitation of and benefiting from said activities.

42.     Multiple employees at the subject Super 8 Hotel interacted with Plaintiff's traffickers and those who paid to sexually exploit her at said hotel.

43.     Defendant SHI, as the franchisee, observed the signs of sex trafficking before, during, and after Plaintiff's trafficking at the subject Super 8 Wyndham Hotel.

44.     Based upon information and belief, Defendant SHI was required to and did relay its knowledge of sex trafficking to the franchisor Defendant, Wyndham Hotels who monitored not only reports of sex trafficking and commercial sex activity from its franchise, but also internet reports and feedback from other hotel customers that reported such activities.

**Defendant SHI, as Franchisee, Was Required to Report to the Franchisor, Wyndham**

45.     At all material times, Wyndham had robust reporting requirements in place for its franchisees, such as SHI.

46.     Wyndham required its franchisees, such as SHI, to report all suspected instances of crime at Super 8 branded properties, including the subject hotel.

47.     Wyndham regularly received reports from SHI and others related to suspected instances of crime at the subject Super 8 Wyndham Hotel.

48.     Wyndham required its franchisees, such as SHI, to report all suspected instances of sex trafficking at Super 8 branded properties, including the subject hotel.

49.     Wyndham regularly received reports from SHI and others related to suspected instances of sex trafficking and commercial sex activities at the subject hotel.

50.     Wyndham required its franchisees, such as SHI to allow Wyndham to regularly inspect its Super 8 branded hotels.

51.     Wyndham regularly inspected the Super 8 Wyndham Hotel.

52.     Wyndham is the largest hotel franchisor in the world.  One of Wyndham's most valuable assets is its brand[10].  In order to maintain the value associated with its brand, Wyndham required SHI to adhere to strict requirements, including but not limited to:

---

[10]https://www.sec.gov/Archives/edgar/data/1722684/000172268419000008/wh-20181231x10k.htm  Wyndham represented to the SEC the following:

**OUR BUSINESS**

Wyndham Hotels & Resorts, Inc. ("Wyndham Hotels", the "Company", or "we") is the world's largest hotel franchisor, with nearly 9,200 affiliated hotels located in over 80 countries. We license our 20 renowned hotel brands to franchisees, who pay us royalty and other fees to use our brands and services. . . . we have a robust pipeline of hotel owners and developers who have executed franchise agreements for our brands. Wyndham Hotels became an independent public company in May 2018 when it was spun-off from Wyndham Worldwide Corporation ("former Parent"). In 2018, Wyndham Hotels generated revenues of $1,868 million, net income of $162 million and Adjusted EBITDA of $507 million. . . We drive guest reservations to our franchisees' properties through strong brand awareness among consumers and businesses. . . We establish brand standards, provide our franchisees with property-based operational training and turn-key technology solutions, and help reduce their costs by leveraging our scale. . . . Our portfolio of global brands enables us to franchise hotels in virtually any market at a range of price points, catering to both our guests' and franchisees' preferences. . . . Our business model is asset-light, as we generally receive a percentage of each franchised hotel's room revenues but do not own the underlying properties. . . . Our franchise agreements are typically 10 to 20 years in length, providing significant visibility into future cash flows. Under these agreements, our franchisees pay us royalty fees and marketing and reservation fees, which are based on a percentage of their gross room revenues. . . . We use our scale, brands, guest loyalty, franchisee network and sales capabilities to add new hotels to our system. . . .*Industry-leading footprint in the hotel industry. . .* Our brands have substantial presence, welcoming over 150 million guests annually worldwide. . . Our scale enhances brand awareness among consumers and businesses and provides numerous benefits to franchisees. . . . ***Strong portfolio of well-known brands***. . . We have assembled a portfolio of 20 well-known hotel brands, from leading economy and midscale brands such as Super 8, Days Inn and La Quinta to upscale brands such as Wyndham and Dolce. Our Super 8 brand, with over 2,800 affiliated hotels, has more hotel properties than any other hotel brand in the world. Our brands are located in primary, secondary and tertiary cities and are among the most recognized in the industry. . . Furthermore, with the addition of the "by Wyndham" endorser, our brands now enjoy even higher awareness. Our brands offer a breadth of options for franchisees and a wide range of price points and experiences for our guests, including members of our award-winning Wyndham Rewards loyalty program. Our brands have also won numerous industry awards . . . our brands not only drive online and telephone reservations to hotels, they also help attract guests on a "walk-in" or direct-to-hotel basis. . . We have built a leading position in the economy and midscale segments of the hotel industry, with our brands

---

a. standardized training methods for employees at the Super 8 Hotel;

b. building and maintaining the Super 8 Hotel in a manner specified by Defendant Wyndham;

c. standardized or strict rules of operation for the Super 8 Hotel;

d. regular inspection of the Super 8 Hotel and its operation by Defendant Wyndham;

e. prices fixed by Defendant Wyndham for the Super 8 Hotel;

f. Defendant Wyndham provided an online booking platform for the Super 8 Hotel;

g. Defendant Wyndham established reporting requirements for the Super 8 Hotel; and

h. other actions that deprived Defendant SHI of independence in the business operations and normal management decisions of the Super 8 Hotel.

53. In order to maintain brand consistency, Wyndham had the ability to impose fees or fines on SHI. Furthermore, at all material times, Wyndham retained an absolute right to cancel its franchise agreement with Defendant SHI if Wyndham's rules were violated or if SHI otherwise failed to comply with its contractual obligations.

54. Therefore, as a result of the strict reporting requirements, at all material times, Wyndham had actual and constructive knowledge and control over its franchisee SHI as it related to policies and procedures to prevent sex trafficking. Each Wyndham Super 8 Defendant knew or should have known of their facilitation of sex trafficking at the subject Super 8 Hotel.

55. Wyndham directly participated in and retained day-to-day control over renting rooms at the subject Super 8 Wyndham Hotel by, among other things:

---

representing approximately 40% of both U.S. economy and U.S. midscale hotel inventory. . . In addition, we have substantial experience in property design, hotel management training, establishing brand standards, advertising, structuring promotional offerings and online marketing for economy and midscale brands. . . *Strong and experienced management team. . .* Our executive management team is focused on building upon Wyndham Hotels' past success and track record of growth through its deep industry experience and leadership continuity. . .

a. requiring the franchisee to use the franchisor's centralized reservation system and preventing the franchisee from using any other system
b. requiring the franchisee to use a software system operated and controlled by the franchisor for booking rooms and checking guests into rooms.
c. requiring the franchisee to use a software system operated and controlled by the franchisor to process payments.
d. requiring the franchisee to use a property-management system operated and controlled by the franchisor.
e. Requiring the franchisee to use a data-management system operated and controlled by the franchisor.
f. ensuring that data related to each room reservation passes through systems owned, maintained, and managed by the franchisor.
g. exercising control over the price of rooms.
h. controlling all details of the customer loyalty program that the franchisee was required to implement.
i. setting detailed policies for the check-in process, including requirements for identification and payment methods.
j. collecting guest data, requiring the franchisees to report guest data, and reviewing and analyzing guest data, including names, payment information, reservation history, internet browsing data, and other details associated with their stay.
k. assuming sole ownership over all guest information
l. overseeing do not rent (DNR) lists for its branded properties.

56.     Wyndham directly participated in and retained control over aspects of the operation of subject Super 8 Wyndham Hotel related to trafficking by:

a. assuming joint responsibility with the franchisee for detecting and preventing human trafficking at the hotel property
b. assuming or retaining control over and responsibility for adopting, monitoring, and enforcing policies and protocols requiring hotel staff to report suspected criminal or trafficking activity to the franchisor
c. assuming or retaining control over and responsibility for training hotel staff on detecting and responding to human trafficking
d. assuming or retaining control over and responsibility for adopting, monitoring, and enforcing policies and protocols regarding detecting and responding to human trafficking
e. employing field-based associates who work with hotels on trafficking issues
f. assessing or auditing hotel properties, specifically, for the purpose of evaluating whether safety and security measures related to trafficking are in place.
g. establishing systems for guests to report security issues to Wyndham
h. requiring franchisees to provide Wi-Fi/internet access to guests

    i.   mandating the specific tools and systems that franchisees must use to provide Wi-Fi/internet access to guests

    j.   setting policies and protocols regarding guest use of Wi-Fi/internet, filtering and site-blocking mechanisms deployed, and monitoring/tracking of guest usage

    k.  requiring franchisees to use a system to monitor and track housekeeping requests.

    l.   setting policies for when and how housekeeping services are provided.

    m. collecting and monitoring data that shows patterns of use of housekeeping services

    n.  setting policies for when and how hotel staff can accept tips.

57.    Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Super 8 Wyndham Hotel, Defendant continued renting rooms to these traffickers, including the rooms used to sexually exploit victims.

58.    Defendants knew or should have known that Plaintiff T.S. was being trafficked and, despite this, benefited from continued association with her traffickers by providing them hotel rooms and related services to facilitate Plaintiff T.S.' s sexual exploitation.

59.    Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Super 8 Wyndham Hotel, Wyndham continued operating subject Super 8 Wyndham Hotel together with SHI in a way that it knew or should have known would result in facilitating additional sex trafficking at subject Super 8 Wyndham Hotel, including by:

    **a.**  adopting, maintaining, and enforcing policies and practices regarding guest identification in a way that facilitated trafficking by allowing traffickers, including Plaintiff's traffickers, to secure rooms without providing their own identifying information

    **b.**  adopting, maintaining, and enforcing policies and practices regarding payment methods in a way that facilitated trafficking by allowing traffickers, including Plaintiff's traffickers, to pay for rooms using non-traceable methods

    **c.**  adopting and enforcing training methods for the franchisee and hotel staff in a way that led to widespread and ongoing trafficking at the hotel property

    **d.**  adopting and enforcing policies and protocol regarding trafficking in a way that led to widespread and ongoing trafficking at the hotel property

    **e.** providing traffickers continued access to Wyndham's-maintained internet systems despite having active or constructive knowledge this access was being used for advertising services related to their trafficking activities

    **f.** adopting inappropriate and inadequate practices for monitoring, supervising, and responding to issues regarding the conduct of SHI and hotel staff related to human trafficking at the subject Super 8 Wyndham Hotel

    **g.** implicitly or explicitly encouraging the franchisee to continue facilitating trafficking by continuing the same methods of operation at the hotel property despite obvious evidence that those methods were leading to widespread and ongoing sex trafficking

    60.    If Wyndham had exercised reasonable diligence when operating the subject Super 8 Wyndham Hotel and in the areas where it retained control, Wyndham would have prevented the subject Super 8 Wyndham Hotel from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of Plaintiff T.S. Instead, Wyndham engaged in the course of conduct that affirmatively facilitated widespread and ongoing sex trafficking, including the trafficking of Plaintiff T.S.

## A. Defendants' ventures at the Subject Super 8 Hotel.

    61.    Through the conduct described above, Wyndham and SHI knowingly benefited from engaging in a venture with sex traffickers at subject Super 8 Wyndham Hotel, including Plaintiff T.S.'s traffickers, as follows:

    a.    Wyndham and SHI both received benefits, including increased revenue, every time a room was rented at the subject Super 8 Wyndham Hotel.

    a.    This venture engaged in violations of violated 18 U.S.C. §1591 through the actions of the criminal traffickers at the subject Super 8 Wyndham Hotel, which Wyndham and SHI knew or should have known about.

    b.    Wyndham and SHI associated with traffickers, including Plaintiff T.S.' traffickers, by acting jointly to continue to rent rooms to these traffickers despite having actual or constructive knowledge of their sex trafficking activity.

    c.    Wyndham and SHI had a mutually beneficial relationship with the traffickers at the subject Super 8 Wyndham Hotel, fueled by sexual exploitation of victims.

    **d.**     Sex traffickers, including Plaintiff's traffickers, frequently used the subject Super 8 Wyndham Hotel for their trafficking because of an implicit understanding that the subject Super 8 Wyndham Hotel was a venue that would facilitate their trafficking, providing minimal interference and lowering their risk of detection. This understanding occurred because of the conduct of Wyndham and SHI facilitating that trafficking as described throughout this complaint. This resulted in benefits, including increased revenue, for Wyndham and SHI.

    **e.**     Both Wyndham and SHI participated in this venture through the conduct described throughout this Complaint as they were jointly responsible for relevant aspects of hotel operations.

    **f.**     Plaintiff T.S's trafficking at the subject Super 8 Wyndham Hotel was a result of Wyndham and SHI's participation in a venture with criminal traffickers. If Wyndham and SHI had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Plaintiff T.S.'s trafficking at the subject Super 8 Wyndham Hotel.

    62.     Through the conduct described above, Wyndham also knowingly benefited from engaging in a venture with SHI operating the subject Super 8 Wyndham Hotel as follows:

    **a.**     Wyndham associated with SHI to operate the subject Super 8 Wyndham Hotel.

    **b.**     Pursuant to the terms of the franchising agreement, both Wyndham and SHI received financial benefits from operating the subject Super 8 Wyndham Hotel, including revenue generated specifically by renting rooms to traffickers. They engaged in revenue sharing and had a common incentive to maximize revenue.

    **c.**     This venture violated 18 U.S.C. §1591(a) through the conduct of SHI and the widespread sex trafficking at the subject Super 8 Wyndham Hotel.

    **d.**     Despite its actual or constructive knowledge that the venture was engaged in violations of 18 U.S.C. §1591(a), Wyndham participated in the venture by continuing to associate with SHI to operate the subject Super 8 Wyndham Hotel in a way that it knew or should have known would lead to further violations of 18 U.S.C. §1591(a), including trafficking of victims like Plaintiff T.S.

    e.     Plaintiff T.S.'s trafficking at the subject Super 8 Wyndham Hotel was a result of Wyndham's and SHI's facilitation of the widespread and ongoing violations of 18 U.S.C. §1591(a) at the subject Super 8 Wyndham Hotel. Had Wyndham not continued participating in a venture that it knew or should have known was engaged in violations of 18 U.S.C. §1591(a), it would not have received a benefit from Plaintiff T.S.'s trafficking at the subject Super 8 Wyndham Hotel.

## DEFENDANT SHI, AS THE FRANCHISEE, IS THE AGENT OF DEFENDANT, WYNDHAM HOTELS

63.     Upon information and belief, at the time of the incidents alleged herein, Defendant Wyndham Hotels was in an agency relationship with Defendants Sarah Hospitality, Inc. for which Defendant Wyndham Hotels is vicariously liable for the acts, omissions and knowledge of the staff of Defendant, SHI at the subject Wyndham Super 8 Hotel because said staff are the actual agents and sub-agents of Defendant Wyndham Hotels, as franchisee.

64.     At all times material to this action, Defendant Wyndham Hotels exercised ongoing and systematic control over operations at the subject Super 8 Wyndham Hotel sufficient to establish an agency relationship with Defendant Sarah Hospitality, Inc.

65.     At all times material to this action, Defendant Wyndham Hotels exercised control over the means and methods of how Defendant Sarah Hospitality, Inc., conducted business at the subject Super 8 Wyndham Hotel through the following actions:

   a.   Hosting online bookings on Wyndham Hotels' domain;

   b.   Requiring the Super 8 Wyndham Hotel to use Wyndham Hotels' customer rewards program;

   c.   Setting employee wages;

   d.   Making employment decisions;

   e.   Advertising for employment;

   f.   Sharing profits;

   g.   Requiring standardized training methods for employees;

   h.   Building and maintaining the facility in a manner specified by the owner;

   i.   Requiring standardized or strict rules of operation;

   j.   Regularly inspecting the facility and operation by owner;

   k.   Fixing prices;

l.  Requiring its franchisee to report criminal activity to Wyndham and to law enforcement; and/or

m.  Acting in other manners that deprived Defendant SHI of independence in business operations.

66.  An apparent agency relationship also existed between Defendant Wyndham Hotels and Defendant, Sarah Hospitality, Inc. Defendant Wyndham Hotels represented to the public that Defendant, Sarah Hospitality, Inc. had authority to act on behalf of Wyndham branded hotels.

67.  Defendant Wyndham Hotels failed to address and prevent human trafficking at its Wyndham Hotels branded hotels, specifically the subject Super 8 Wyndham Hotel, in the following ways:

a.  Failing to adequately distribute information to assist employees in identifying human trafficking;

b.  Failing to provide a process for escalating human trafficking concerns within the organization;

c.  Failing to mandate managers, employees, or owners attend training related to human trafficking;

d.  Failing to provide new hire orientation on human rights and corporate responsibility;

e.  Failing to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

f.  Failing to develop and hold or require ongoing training sessions on human trafficking;

g.  Failing to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention; and/or

h.  Failing to design, implement and enforce a policy to report suspected sex trafficking to authorities immediately whenever it was suspected and to follow up with and assist law enforcement as necessary.

68.     Defendant Sarah Hospitality, Inc., is an alter ego, representative, agent, or coconspirator of Defendant Wyndham Hotels, and Defendant Wyndham Hotels exercised or had the right to exercise control over business operations, management, supervision, administration, and procedures of the Defendant Sarah Hospitality, Inc.

69.     The Super 8 Defendants are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the Super 8 Wyndham Hotel where the Plaintiff T.S., a minor, was trafficked for sex. The Super 8 Defendants each share the common policies and practices complained of herein.

70.     The Super 8 Defendants jointly employ or ratify the employment of individuals through horizontal joint employment and/or vertical joint employment relationship.

71.     As an integrated enterprise and or joint employer, the Super 8 Defendants are separately and jointly responsible for compliance with all applicable laws and internal policies designed to prevent sex trafficking.

72.     At all material times, each Defendant owned, operated, managed, supervised, controlled, and was responsible for the operations of the subject Super 8 Hotel.

73.     Armed with knowledge of the prevalence of trafficking in the hotel industry, at Super 8 hotels across the country, and the signs present at the subject Super 8 Hotel, each Defendant had an obligation to enact, implement, follow, and adequately enforce policies to identify, prevent and stop sex trafficking and not to participate in or benefit from the facilitation thereof. Each Defendant failed to do so and thus facilitated sex trafficking that operated out of the subject Super 8 Hotel.

74.     The most effective weapon against sexual exploitation and human trafficking is education and training.[11]   As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property. [12]

75.     This same conclusion is echoed by others who seek to eliminate or minimize sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[13] In reference to companies like the Defendants, ECPAT observed:  "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

76.     If the Defendants had adequately trained and implemented guidelines, "red flags" training policies and procedures, and other recommendations adopted in the industry, each Defendant knew or should have known of the sex trafficking venture at the subject Super 8 Wyndham Hotel and would have been in a position to prevent and stop the trafficking of Plaintiff by taking appropriate action to report and/or stop it immediately.

77.     More specifically, upon arrival and throughout her trafficking at the subject Super 8 Hotel, the "red flags" of the sex trafficking venture were apparent to the point where Defendants'

---

[11] https://polarisproject.org/recognizing-human-trafficking/
[12] https://www.ecpatusa.org/hotel-training.  ECPAT reports that, of hotel employees who receive training on sex trafficking, 84% have increased awareness of these events compared with 16% of untrained employees.  See https://www.ecpatusa.org/novacancy.  See also Sex Trafficking in the Tourism Industry, J. Tourism Hospit. 2015, link at https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf
[13] https://www.ahla.com/issues/human-trafficking

managers admitted that they suspected commercial sex with a child under 18 was occurring and had occurred in Room 262, the room in which the Plaintiff was located.

78.     The "red flags" and signs of a sex trafficking venture described above were observed by Defendant SHI.  Upon information and belief, Defendant SHI reported the signs of sex trafficking to Defendant Wyndham.

79.     Had each Defendant adequately motivated, educated and/or trained their actual or apparent agents, servants, franchisees, employees and/or staff regarding human trafficking and their warning signs, their actual or apparent agents, servants, franchisees, employees and/or staff would have more aware of human trafficking taking place at their hotels, including the subject Super 8 Hotel, and could have prevented it from happening or, at a minimum, been more willing to report it immediately to law enforcement while it was happening and followed up to make sure it was stopped.

80.     Each Defendant actively and decidedly failed to prevent and stop sex trafficking and sexual exploitation at their hotels, including the subject Super 8 Hotel because they benefited from such activity.

81.     Thus, each Defendant engaged in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of Plaintiff, and others like her, for commercial sexual exploitation.  More specifically, the Defendants rented rooms to  traffickers, including Plaintiff's traffickers, permitted their illicit enterprise to operate on an ongoing and repetitious basis, and made the decision not to take to abide by Wyndham's own self-imposed anti-trafficking measures and failed to immediately report said sex trafficking to law enforcement while it was occurring so that the Plaintiff, and others like her, could have been

rescued. This and related behavior by Defendants provide an ample basis to conclude that they participated in the venture that trafficked Plaintiff as a minor child.

82.     The motivation behind each Defendant's ongoing willful blindness and ongoing failure to act is plain and simple –pure corporate greed; each Defendant herein ignored all of the signs of and/or solutions to human trafficking out of an unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

**Each Defendant Knowingly Benefitted from Plaintiff's Sex Trafficking**

83.     Plaintiff alleges that each of the Defendants knowingly received financial benefits from participating in the venture that facilitated Plaintiff's trafficking at the subject Super 8 Wyndham Hotel.

84.     Wyndham, as franchisor, generates substantial income from operations of hotels such as the subject Super 8 Wyndham Hotel.  In exchange for providing the services described above, Wyndham received a share of the profits from room rentals collected by SHI at the subject Super 8 Wyndham Hotel. The primary source of Wyndham's income is the franchising royalty fee, but Wyndham also profits from reservation fees, marketing fees, loyalty program fees, and other miscellaneous ancillary fees, as described in the franchise documents. The fees generated by Wyndham are primarily based on gross room rentals; therefore, Wyndham's profits increase with each room rental.

85.     SHI, as franchisee, profited from every stay by every patron at its Super 8 Wyndham Hotel, both from room rentals and other hotel services.

86.     Therefore, at all times material to this Complaint, each Defendant received monetary payment for the rental of rooms at the subject Super 8 Wyndham Hotel, including payment for the room where Plaintiff was being trafficked.

87.     As a result of the monies paid by Plaintiff's traffickers to secure rooms for her trafficking, each Defendant knowingly benefitted from participating in the venture that trafficked, harbored, and maintained Plaintiff's trafficking at the subject Super 8 Hotel.

88.     The venture or ventures in which each Defendant participated were proximate causes of the injuries and damages to Plaintiff and were direct causes and/or substantial factors in causing those injuries and damages.

89.     Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Plaintiff for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

CAUSES OF ACTION

**I.     Cause of Action 1: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a)**

90.     Plaintiff incorporates all prior paragraphs and other allegations.

91.     At all relevant times, Plaintiff was and is a victim within the meaning of 18 U.S.C. § 1591 and thus entitled to bring civil action under 18 USC 1595(a) against the Defendants who are the perpetrator of any violation of the TVPRA.

92.     At all relevant times, Wyndham and SHI were perpetrators within the meaning of 18 U.S.C. § 1595(a).

93.     Each Defendant knowingly benefitted, by receiving financial and other compensation, through their participation in a venture involving the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits. 18 U.S.C. §§ 1590(a), 1591 (a)(1), 1591(a)(2), 1593A.

94.     As described herein, each Defendant knew or should have known it was participating in a venture involving the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits, in violation of the TVPRA, 18 U.S.C. § 1591, et seq.

95.     Despite knowledge of Plaintiff's sex trafficking by the Defendants, Plaintiff's trafficker was able to continue renting rooms for the sexual exploitation of Plaintiff at the subject Super 8 Hotel.

96.     Thus, each Defendant participated in a venture with, among others, Plaintiff's traffickers. Each of the venturers shared a common purpose – the rental of hotel rooms and the making of profits. Each Defendant profited while Plaintiff's trafficker was able to rent a secure venue to traffic Plaintiff. Each Defendant took affirmative actions in furtherance of the venture by continuing to rent rooms to Plaintiff's trafficker during the periods in question, failing to properly implement anti-trafficking rules and policies, and failing to promptly notify the appropriate authorities to report Plaintiff's sex trafficking, or take such other action to stop Plaintiff from being a continued victim of sex trafficking and a sex slave.

97.     Each Defendant's failure to train their agents and employees and their inattention to the plights of their patrons, including Plaintiff at the subject hotel, enabled and contributed to the sex trafficking of Plaintiff.

98.     Each Defendant knowingly participated in a sex trafficking venture as a result of the support, facilitation, harbouring, maintenance, and/or other acts in furtherance of sex trafficking, including the sex trafficking of Plaintiff.

## II.   Cause of Action 2: Beneficiary Liability under 28 USC §1595 (a) of the TVPRA (all Defendants)

99.     Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C §1591 and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

100.    Through acts and omissions described throughout this Complaint, each of the Defendants received a financial benefit from participating in a venture with traffickers, including Plaintiff's traffickers, despite the fact that each defendant knew or should have known that these traffickers, including Plaintiff's traffickers, were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2). Thus, each of the Defendants is liable as a beneficiary under 18 U.S.C §1595(a).

101.    Through the acts and omissions described throughout this Complaint, each of the Defendants received a financial benefit from participating in a venture with its respective franchisee regarding the operation of its respective hotel property despite the fact that each Defendant knew or should have known that this venture was violating 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2).

102.    Violations of 18 U.S.C §1595(a) by each of the Defendants as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

103.    Each Defendant received substantial financial benefits as a result of these acts and/or omissions.  Wyndham received benefits in the way of management fees, royalty fees, reservation fees, marketing fees, and other ancillary fees from the operation of the subject Super 8

Wyndham Hotel.  SHI received benefits in the way of room rental fees, in-room purchases, and other ancillary expenses by patrons and visitors of the subject Super 8 Wyndham Hotel.

104.    The facts alleged establish that each Defendant knowingly benefitted, financially or by receiving anything of value from participating in a venture that Defendants knew or should have known was an act in violation of the TVPRA.

### III. Cause of Action 3: Liability under 18 U.S.C. § 2255

106.    While a minor, Plaintiff was a victim under 18 U.S.C. §1591 and is thus entitled to bring a civil action under 18 U.S.C. § 2255.

107.    Each of the Defendants are liable to Plaintiff under 18 U.S.C. § 2255 because, as alleged above, each Defendant is a perpetrator under 18 U.S.C. §1591.

108.    Each of the Defendants are liable to Plaintiff under 18 U.S.C. § 2255 because, as alleged above, each Defendant is liable as a beneficiary under 18 U.S.C. §1595(a).

### IV. Cause of Action 4:  Vicarious Liability for Violations of TVPRA and §2255

109.    Defendant, SHI acted as the actual agent of Defendant, Wyndham when operating the subject Super 8 Wyndham Hotel.

110.    Each of the Defendants exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisee to operate said hotel property.

111.    Under 18 U.S.C § 2255, the TVPRA, and the federal common law, a principal is vicariously liable for the violations of its actual agent and its subagents.

112.    Defendant, Wyndham is vicariously liable for the TVPRA and § 2255 violations of SHI and the subagents of SHI.

## V. Cause of Action 5:  Vicarious Liability for Violations of TVPRA as Joint Employers of Hotel Staff

113.    At all relevant times, Wyndham and SHI were joint employers of the staff of the subject Super 8 Wyndham Hotel because they exercised joint control over the terms and conditions of employment, and economic realities reflect joint employment.

114.    Under the TVPRA and the federal common law, Wyndham, as a joint employer of the staff of the subject Super 8 Wyndham Hotel, is vicariously liable for the acts and omissions of the staff of the subject Super 8 Wyndham Hotel.

115.    As alleged above, the staff of the subject Super 8 Wyndham Hotel engaged in conduct that violated 18 U.S.C §1591(a) and §1595(a). Wyndham is vicariously liable for these TVPRA violations.

116.    Each Defendant's TVPRA violations were a direct, producing, and proximate cause of the injuries and damages to Plaintiff.

### DAMAGES

117.    Each of the Defendants' acts and omissions, individually and collectively, jointly and severally, are a producing and/or proximate cause of Plaintiff to sustain legal damages.

118.    Plaintiff is entitled to be compensated for personal injuries and economic damages she has suffered in the past and that in reasonable probability she will continue to suffer into the future, including:

     a.   Actual damages;

     b.   Direct damages;

     c.   Incidental and consequential damages;

     d.   Mental anguish and emotional distress damages (until trial and in the future);

     e.   Lost earning capacity in the past and future;

f.   Loss of self-esteem and self-worth;

g.   Necessary medical expenses;

h.   Physical pain and suffering;

i.   Physical impairment;

j.   Emotional impairment;

k.   Unjust enrichment;

l.   Civil Penalties;

m.   Attorney's fees;

n.   Exemplary/punitive damages;

o.   Costs of this action; and

p.   Prejudgment and all other interest and penalties recoverable.

### PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

119.   Plaintiff would show that each of the Defendants' conduct as set forth herein demonstrates a deliberate disregard for the rights and safety of persons like T. S. and thus said Defendants are liable for punitive damages under Minnesota law.  In this regard, Plaintiff would show that each of the Defendants had actual knowledge of the fact that T. S. was under 18 and was the victim of sex trafficking in Room 262 during the period of September 10 – September 12, 2013, yet consciously and/or deliberately disregarded said facts which created a high probability of harm to the Plaintiff.  Plaintiff would further show that each of the Defendants were aware that commercial sex activity was occurring at the subject Super 8 Wyndham Hotel before the occurrence involving Plaintiff and during Plaintiff's presence in Room 262 and that Defendants continued to be aware of said ongoing commercial sex trafficking at said hotel thereafter yet did little to nothing to stop it while they continued to profit from it.  Plaintiff would further show that such egregious and deliberate conduct reflects a conscious disregard of Plaintiff's rights and safety

while she was forced to act as a sex slave in Defendants' hotel room. Plaintiff would show that said conduct is a proximate cause of Plaintiff's injuries and damages set forth herein and entitles Plaintiff to punitive damages in an amount deemed fair and just by this Court and the jury to discourage similar conduct in the future and set an example to Defendants and others that sexual trafficking of minors will not be tolerated in the State of Minnesota.

120.    Plaintiff is entitled to recover attorneys' fees and costs of court.

121.    Plaintiff is entitled to pre- and post-judgment interest at the maximum legal rates.

122.    A constructive trust should be imposed on Wyndham and SHI, and the Court should sequester any benefits or money wrongfully received by Wyndham or SHI for the benefit of Plaintiff.

123.    Plaintiff further seeks a revocation of Defendants' right to conduct business as a hotel in the State of Minnesota.

### JURY TRIAL

124.    Plaintiff demands a jury trial on all issues.

### RELIEF SOUGHT

WHEREFORE, Plaintiff prays that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for Plaintiff against all Defendants jointly and severally for the actual, compensatory, and punitive damages as the evidence may show, and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which Plaintiff may, in law or in equity, show herself to be justly entitled.

Respectfully submitted,

**SIEBEN CAREY, P.A.**

By: _____

    JEFFREY M. MONTPETIT (#0291249)
    901 Marquette Avenue, Ste. 500
    Minneapolis, MN 55402
    Phone: 612/333-9762
    jeffrey.montpetit@knowyourrights.com

*8-16-2023*

**PROVOST ★ UMPHREY LAW FIRM**

DARREN L. BROWN (TX SBN 03108350)
MATTHEW MATHENY (TX SBN 24039040)
*Pro Hac Vice Pending*
350 Pine Street, Ste. 1100
Beaumont, TX 77701
Phone: 409/838-8881
Fax: 409/813-8630
dbrown@pulf.com
mmatheny@pulf.com

**ANNIE MCADAMS, PC**

ANNIE MCADAMS (TX SBN 24051014)
*Pro Hac Vice Pending*
1150 Bissonnet
Houston, TX 77005
Phone: 713/785-6262
Fax: 866/713-6141
annie@mcadamspc.com