**UNITED STATES DISTRICT COURT**
**OF MINNESOTA**

T. S.,

Plaintiff

v.

WYNDHAM HOTELS & RESORTS, INC. f/k/a WYNDHAM WORLDWIDE CORPORATION, d/b/a SUPER 8 HOTEL, SARAH HOSPITALITY, INC., WYNDHAM HOTEL GROUP, LLC, AND SUPER 8 WORLDWIDE, INC.

Defendants.

Case No. 0:23-cv-02530-PJS-ECW

**PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM AND FOR PROTECTIVE ORDER (ORAL ARGUMENT REQUESTED)**

COMES NOW Plaintiff Jane Doe (T.S.), by and through the undersigned counsel, and respectfully submits this Motion to Proceed Under Pseudonym and for Protective Order. T.S. requests oral argument to fully present her position in this matter.

**INTRODUCTION**

T.S,. is a survivor of sex trafficking. ECF No. 1. She was repeatedly exploited at a hotel owned, operated, and controlled by Defendants. *Id.* ¶ 1. The trauma that T.S. experienced at Defendants' hotel caused harm that affects T.S. every day and will continue to affect her for the rest of her life. Despite facing the obstacles noted above, T.S. has bravely stepped forward to pursue a Trafficking Victims Protection Reauthorization Act ("TVPRA") claim against Defendants. T.S. filed this lawsuit using a pseudonym. ECF No. 1. Use of a pseudonym and appropriate protections for her identity are necessary to ensure that T.S. can pursue her legal rights without the risk of undue harm to her person, family, or the life she is trying to reclaim. T.S. hereby seeks leave to proceed under a pseudonym and for the Court to enter a protective order to

adequately protect Plaintiff from the unsupported disclosure of her Identity.[1]

Recognizing both the unthinkable harm caused by sex trafficking and the role of businesses in facilitating it, Congress has repeatedly expanded the legal tools available to victims of sex trafficking under federal law. *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 180 (E.D. Pa. 2020). The TVPRA created a civil remedy against businesses that know or should have known they are profiting from participating in a venture that facilitates sex trafficking. 18 U.S.C. § 1595(a); *A.B.*, 455 F. Supp. at 180. But, while Congress has created increasingly robust tools in the fight against sex trafficking, challenges remain for survivors who seek to use those tools. Victims who escape and/or speak out against trafficking live in fear of their former captors. Threats, intimidation, and violence are part of the trafficking business model, and traffickers often go to significant lengths to instill fear in survivors from pursuing available legal remedies. Moreover, pursuing legal rights requires a survivor to relive the traumatic, personal, and deeply stigmatizing events involved in sex trafficking.

Defendants have not disputed that some protection of T.S.'s identity is warranted. As such, the parties disagree only about the scope of appropriate protections. T.S. asks the Court to enter an order authorizing her to proceed using a pseudonym in this litigation. She also seeks additional protections related to the disclosure of her identity by Defendants. T.S.'s Proposed Protective Order would: (1) prohibit use of Plaintiff's Identity in public filings and pretrial proceedings; (2) limit Defendants' use and disclosure of Plaintiff's Identity to only permissible litigation purposes; (3) require that certain persons and fact witnesses sign an Acknowledgment & Agreement To Be

[1] "Plaintiff's Identity" means the Plaintiff's personally identifiable information, including: (i) names and aliases used by Plaintiff at any time; (ii) Plaintiff's date of birth; (iii) Plaintiff's social security number; (iv) Plaintiff's current and prior residential addresses; (v) Plaintiff's phone numbers and social media or online user account names; (vi) Plaintiff's likeness; and (vii) the names of Plaintiff's biological or adoptive parents, and biological siblings. *See* Proposed Protective Order at pp. 1-2.

Bound by the Protective Order before Plaintiff's Identity is disclosed to them; and (4) establish procedures regarding the disclosure of Plaintiff's Identity to her trafficker and their associates. The protections are generally no greater than those requested by Defendants and provided within the Proposed Protective Order for Defendants' "Confidential" proprietary information. The Court should enter this Proposed Protective Order because it properly balances T.S.'s important privacy and safety interests with Defendants' interest in maintaining the confidentiality of their own documents and investigating and defending against T.S.'s claims.

## **RELEVANT FACTS**

T.S. is a sex-trafficking survivor. Her trafficking began while she was a minor. Her traffickers controlled her through threats, physical violence and she was forced to engage in commercial sex for her traffickers' financial benefit. T.S.'s traffickers not only threatened her but threatened her family. Defendant's hotel records confirm that T.S. was trafficked at Defendant's hotel as a minor. T.S.'s traffickers were tried and convicted with regard to horrendous acts of human trafficking they inflicted upon her.

T.S. has a legitimate and reasonable fear of stigma within her community if her identifying information is linked to this lawsuit. Moreover, T.S. has a reasonable fear of harm from her trafficker or their associates if her identity is not protected.

Plaintiff also provides the declaration of Dr. Noël Busch-Armendariz, an expert in the field of sex trafficking with over 30 years of experience working with thousands of victims, offenders, and family members. Ex. A, Busch-Armendariz Declaration, at 2–3. In her opinion, "[v]ictims of sex trafficking need the protection of the Court if they are to overcome their very reasonable fears for their safety and the continued stigmatization of their experience and ultimately tell their story." *Id.* at 1. "After a victim finds refuge, she is often haunted by her trafficker's warnings that he or

those working with him will find her or her family members and use physical violence and brutality to bring her back to him." *Id.* at 1–2. "It is empirically documented that human trafficking survivors need extra support given the level of fear and intimidation by the traffickers and given the complexity of the relationship the trafficker entangled with his victim." *Id.* at 6.

## LEGAL STANDARD

As a preliminary matter, courts have broad discretion to direct discovery, including to protect litigants from harassment and abuse. *J.P Morgan Chase Bank, N.A. v. Data Treas. Corp.*, 936 F.3d 251, 255 (5th Cir. 2019) ("A trial court enjoys wide discretion in determining the scope and effect of discovery, and it is therefore unusual to find an abuse of discretion in discovery matters"). Federal Rule of Civil Procedure 10(a) generally requires that the "title of the complaint must name all the parties." However, courts have the discretion to allow a party with special privacy concerns to proceed under a pseudonym. *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266 (E.D. Tex. 2007). Federal Rule of Civil Procedure 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times v. Rhinehart*, 467 U.S. 20, 36 (1984). The Federal Rules underscore such discretion by explaining that courts may "for good cause, issue an order to protect a party or person from **annoyance, embarrassment, oppression**, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1) (emphasis added). Accordingly, a court can issue a protective order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" *Id.*

The Court's control over the discovery process authorizes it to protect the identity of a party with special privacy concerns by establishing reasonable procedures to prevent disclosure of the party's identity during litigation and beyond. Sex trafficking victims, like T.S., who file lawsuits arising out of their trafficking have strong privacy interests given (1) the highly sensitive nature of

the traumatic events involved in trafficking; (2) the real possibility for stigmatization; and (3) the legitimate fear of reprisal from sex traffickers and their affiliates. *See, e.g.*, *Doe v. Nygard*, No. 20 Civ 6501 (ER), 2020 U.S. Dist. LEXIS 151186, at *7 (S.D.N.Y. 2020). As a result, Courts routinely act to protect the identity of sex trafficking victims when they seek to hold those responsible accountable for their role in their harm.[2]

## ARGUMENT

The need for T.S. to proceed under a pseudonym and for a protective order with robust protections against the disclosure of Plaintiff's Identity is apparent given the nature of the claims made by T.S. **First**, this lawsuit involves inherently private and sensitive information. Sex trafficking of an adult occurs when force, fraud, or coercion is used to cause the victim to engage in a commercial sex act. 18 U.S.C. § 1591(a). To pursue this claim, T.S. will be required to divulge details about the extreme physical violence, sexual exploitation, and psychological abuse that she endured. ECF No. 1 at ¶ 27–32. Courts recognize that details of forced sex and physical and psychological coercion involved in trafficking are deeply intimate matters that warrant protection. *See, e.g.*, *Doe v. G6 Hosp. LLC*, 2022 U.S. Dist. LEXIS 119975, at *7 (E.D. Tex. 2022).

Public disclosure of such sensitive information would be particularly harmful to T.S. who, as a sex-trafficking survivor, is an especially vulnerable plaintiff. "Given the complexity and dangerousness of human trafficking crimes, victims of these crimes require special consideration." Ex. A, at 5. It is well documented that sex-trafficking survivors suffer a wide variety of serious ongoing effects because of the physical, emotional, and sexual trauma they endure. *See, e.g.*, Ann

[2] *See, e.g.*, *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 U.S. Dist. LEXIS 135494 (N.D. Cal. 2020); *A.D. v. Cavalier Mergersub LP*, 2022 U.S. Dist. LEXIS 169979 (M.D. Fla. 2022); *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-4935, 2022 U.S. Dist. LEXIS 162672 (S.D. Ohio 2022); *Doe v. G6 Hosp. LLC*, No. 4:22-CV-198-SDJ, 2022 U.S. Dist. LEXIS 119975 (E.D. Tex. 2022); *A.D. v. Wyndham Hotels & Resorts*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 163851 (E.D. Va. 2020); *M.L. v. craigslist, Inc.*, No. 3:19-06153-BHS-TLF, 2020 U.S. Dist. LEXIS 250732 (W.D. Wash. 2020).

Wagner & Rachel Wagley McCann, *Prostitutes or Prey? The Evolution of Congressional Intent in Combating Sex Trafficking*, 54 HARV. J. ON LEGIS. 17, 21–22 (2017). T.S. has experienced and continues to experience mental and emotional distress because of the trauma she endured while trafficked at Defendants' hotel. ECF No. 1 ¶¶ 27–32, 104. Publicly linking T.S.'s real identity to details of the horrific sexual exploitation she endured would risk retraumatizing her and exacerbating her mental and emotional distress.

**Second**, the nature of this lawsuit poses a real risk for stigmatization. There is a well-known stigma associated with sex work. *A.D. v. Cavalier Mergersub LP*, 2022 U.S. Dist. LEXIS 169979, at *9–10. Because T.S. was forced into performing commercial sex and subjected to extremely degrading acts and conditions, she reasonably fears that linking her real identity to this lawsuit will negatively impact her existing relationships with family, friends, and coworkers as well as her standing in the community. As a result, T.S. has a legitimate interest in not having her actual identity associated with allegations of the "utmost intimacy." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

**Third,** this lawsuit exposes T.S. to a risk of retaliation. The threat of retaliation from sex traffickers is a well-known problem. Risk of reprisal is not an occasional occurrence in sex trafficking; it is essential to the model. Traffickers "may continue to intimidate victims from seeking justice directly or indirectly through previous threats or third parties" and the "use of fear, intimation, and retribution may be ongoing." Ex. A, at 4. The issue is significant enough that Congress has added anti-retaliation provisions to the TVRPA specifically for sex trafficking perpetrators. 18 U.S.C. § 1595(d). The violence, coercion, manipulation, and threats that traffickers use while trafficking a victim make the victim's fear of subsequent retaliation imminently reasonable. *See M.L. v. Craigslist,* 2020 U.S. Dist. LEXIS 250724, at *5–6 ("Although there are

no allegations, or declarations from [Plaintiff] about recent threats by these individuals, or by associates of these individuals, the Court finds that the allegations in the Amended Complaint are sufficient to show the severity of the potential harm is immense, and [Plaintiff]'s fear of harm if these individuals find out who she is, or where she works, or where she resides, is reasonable.") T.S.'s trafficker has harmed her before and threatened her and her family. The extreme abuse that T.S. endured while under the control of her trafficker demonstrates that he is a dangerous individual capable of inflicting additional substantial harm. ECF No. 1 at ¶ 27–32. T.S. has an interest in protecting herself and her loved ones from the risk of retaliation from her trafficker and those connected to them.

**Finally**, there is a substantial public interest in not revealing T.S.'s identity because doing so would likely deter other sex-trafficking survivors from pursuing violations of their own legal rights. The public has an interest in ensuring that courts put in place reasonable procedures to protect the identity of sex trafficking victims who choose to come forward and pursue available legal remedies so that "other victims will not be deterred from reporting such crimes." *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-196 (E.D.N.Y. 2006); *Doe v. Penzato*, No. CV10- 5154 MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) ("[T]he public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes"). "Ultimately, victims deserve to be released from their victimization story, and without the protection of anonymity they have little hope." Ex. A, at 2.

These interests, balanced against Defendants' need to investigate the allegations against them, justifies a meaningful protective order with robust protections for Plaintiff's Identity. The Court should enter T.S.'s Proposed Protective Order because it appropriately balances the relevant interests. When crafting protections for the identity of a party who has an interest in proceeding

without disclosure of the party's identity, courts should endeavor "to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case." *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 U.S. Dist. LEXIS 135494, at *30 (internal citations and quotations omitted).

**I. There is good cause to prohibit use of Plaintiff's Identity in all pretrial proceedings and public filings.**

Under the Proposed Protective Order, all parties would be required to refer to T.S. by a pseudonym and redact Plaintiff's Identity in all public filing and pretrial proceedings. This is a reasonable protection that appropriately balances T.S.'s important privacy and safety interests with Defendants' interests in defending against T.S.'s claims.

"Psychological coercion in trafficking dynamics cannot be understated." Ex. A, at 1. Given the widespread availability of docket filings on the internet, a plaintiff who is forced to publicly tie her identity to very sensitive allegations will incur additional "psychological harm from having this sensitive information made available to anyone with internet access." *A.D.*, 2020 U.S. Dist. LEXIS 163851, at *5 (citations and quotations omitted). This risk is particularly acute for T.S., a sex-trafficking survivor who has experienced unthinkable trauma resulting in significant mental and emotional distress. Moreover, T.S.'s interests are not outweighed by any interest of Defendants. Allowing a trafficking victim to use initials in pretrial public filings causes no harm to defendants. *S.Y. v. Jay Varahimata Invs.*, Case No.: 2:20-cv-606-JES-MRM, 2021 U.S. Dist. LEXIS 139036, at *21 (M.D. Fla. June 11, 2021) (finding little risk of prejudice to defendants from allowing victim to proceed using only initials); *B.M.*, 2020 U.S. Dist. LEXIS 135494, at *32.

Nor would this protection interfere with the public's interest in this lawsuit. The lawsuit would remain public other than Plaintiff's Identity. Public disclosure of the identity of a specific sex trafficking victim is not "critical to the working of justice." *B.M.*, 2020 U.S. Dist. LEXIS

135494, at *32. Furthermore, withholding Plaintiff's Identity does not risk "obstructing the public's view of the issues joined or the court's performance in resolving them." *A.D.*, 2022 U.S. Dist. LEXIS 169979, at *11 (citations and quotations omitted). Instead, withholding Plaintiff's Identity is consistent with the public's interest in not creating barriers for sex-trafficking victims to pursue their legal rights. *See Kolko*, 242 F.R.D. at 195.

## II. There is good cause to limit Defendants' disclosure of Plaintiff's Identity.

Because there is good cause to limit public disclosure of Plaintiff's Identity in court filings and proceedings, there is also good cause to put in place restrictions on Defendants' use and disclosure of that same information. The Proposed Protective Order is the product of numerous efforts with past Defendants and their counsel. For Defendants, the Protective Order provides substantial "Confidential" protections for documents Defendants believe contain proprietary information, trade secrets and competitively sensitive information. However, the parties could not agree on the scope of similar protections for the identity of Plaintiff.

During litigation, Plaintiff's Identity will be disclosed to Defendants and their counsel. The Proposed Protective Order contains provisions that limit use of Plaintiff's Identity to legitimate litigation purposes. When information produced in discovery is sensitive or confidential, courts routinely limit how parties may use or disclose that information. The limits in the Proposed Protective Order are appropriately tailored so that Defendants can investigate and defend this case without unnecessary and unlimited risk to Plaintiff.

## III. Requiring fact witnesses to sign an Acknowledgment & Agreement To Be Bound before obtaining Plaintiff's Identity is reasonable and necessary to make limits on disclosure of Plaintiff's Identity meaningful.

The Proposed Protective Order requires several categories of persons including potential

fact witnesses to sign a short and simple Acknowledgment & Agreement To Be Bound by the Protective Order ("Acknowledgment") before defense counsel discloses Plaintiff's Identity to the witnesses. *See* Exhibit A to Proposed Protective Order. It simply states that the person has read and understands the provisions of the Protective Order, agrees to be bound by them, and agrees they will not use or disclose to anyone any of the contents of any Confidential Information or Plaintiff's Identity received under the protection of the Protective Order in violation thereof. This straightforward requirement is necessary to avoid undermining the other provisions in the Proposed Protective Order. In the absence of such a requirement, defense counsel could freely disclose Plaintiff's Identity to individuals closely connected to T.S. and/or her trafficker without **any** limitation on those individuals further disclosing the information. An order limiting disclosure of Plaintiff's Identity would "be rendered practically meaningless" without a provision requiring individuals receiving information to sign an Acknowledgment. *S.Y.*, 2021 U.S. Dist. LEXIS 139036, at *38.

Allowing individuals access to Plaintiff's Identity without requiring them to sign an Acknowledgment would leave no enforceable obligation to protect this information. This would create an unwarranted risk of further dissemination of highly sensitive and deeply personal information that, if spread, would subject T.S. to mental distress, an increased risk of stigma and represent a danger to T.S. and her family. Defendants inherently understand the need for such acknowledgements, which is why the Proposed Protective Order requires that the exact same Acknowledgment be signed by those to whom Defendants "Confidential" documents are disclosed.[3]

Establishing a process to collect and capture Acknowledgments from those potentially

---

[3] Defendants demand that fact witness to execute the Acknowledgement prior to disclosure of Defendants' documents they designate "Confidential." *See* Plaintiff's Proposed Protective Order at Section III, page 5-7.

possessing relevant information before allowing them access to extremely sensitive information does not impose an unreasonable burden on Defendants' ability to investigate this lawsuit and prepare a defense. *J.C.*, 2021 U.S. Dist. LEXIS 60426, at *21. Moreover, any incidental burden is outweighed by T.S.'s legitimate and important privacy and safety interests. If a witness refuses to sign an Acknowledgment, a court can have "little confidence that the witnesses will keep [Plaintiff's] identity, her relationship to her sex trafficker, and her involvement in this litigation confidential." *A.D.*, 2020 U.S. Dist. LEXIS 250685, at * 7 (court *DENIED* defendant's request to reconsider a similar provision, finding that "[p]rovisions such as these are commonplace in cases involving plaintiffs who are proceeding anonymously due to the sensitive subject matter of the litigation," and that the "provision balances Defendant's need to fully investigate Plaintiff's claims against Plaintiff's safety and well-being and the sensitivity of the information involved in this case.).

Courts have concluded that requiring a potential fact witness to sign an Acknowledgment before receiving information about a sex trafficking survivor's true identity strikes a reasonable balance between a plaintiff's privacy interests and a defendant's interests in investigating a claim and preparing a defense.[4] In fact, a court in Georgia recently granted a proposed protective order with minor amendments that is exactly the same as the one here. *Jane Doe (K.B.) v. G6 Hospitality et al.*, 1:23-cv-02597, 2024 U.S. Dist. LEXIS 52030 (N.D. Ga. Mar. 25, 2024). The court reasoned that "if [defendant] could give [plaintiff's] identifying information to anyone who it believes could be called at trial or for a deposition, and if those individuals could disseminate [plaintiff's] identifying information at will, the protective order would be little more than a paper tiger." *Id.* at

[4] *See, e.g., J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2021 U.S. Dist. LEXIS 60426, at *21 (N.D. Cal. 2021); *A.D.*, 2020 U.S. Dist. LEXIS 250685, at *9; *S.Y.*, 2021 U.S. Dist. LEXIS 139036, at *38; *K.S. v. Brisam Clinton LLC et al.*, No. 1:23-cv-04032 (S.D.N.Y. Sept. 22, 2023), Dkt. No. 121.

*11. The court concluded that "that there is good cause for this provision and that the balance of the interests weighs in favor of [plaintiff]." *Id.*

### IV. There is good cause to require Defendants to provide notice before contacting T.S.'s trafficker or their associates.

The Proposed Protective Order also includes reasonable protections surrounding disclosure of information to T.S.'s trafficker and their associates. Specifically, it (1) requires that Defendants give T.S. 7 days' notice before disclosing Plaintiff's Identity to her trafficker or their associates; (2) provides that Defendants can disclose Plaintiff's Identity to T.S.'s trafficker or their associates only insofar as is necessary to assist in their recollection of Plaintiff and her trafficking history; and (3) prohibits disclosure of T.S.'s current location or the location of her family.

The Proposed Protective Order does not prohibit Defendants from contacting T.S.'s trafficker. It simply provides T.S. and her counsel with notice so that she can take appropriate precautions. This modest notice period also gives T.S. an opportunity to take any steps necessary to protect her personal safety including, if necessary, seeking additional protections from this Court before Defendants reveal Plaintiff's Identity to her trafficker or their associates.

This limitation is far less restrictive on defendants than protections other federal courts have ordered in TVPRA cases including where courts have required defendants to affirmatively seek court intervention **before** contacting a plaintiff's trafficker.[5] If T.S. is unaware that her trafficker(s) has been contacted, there is a higher likelihood that the trafficker could catch her off

[5] *See e.g., A.C. v. Red Roof Inns, Inc.*, No. 2:19-cv-4965, 2020 U.S. Dist. LEXIS 163001, at *16 (S.D. Ohio 2020) ("Prior to a Defendant's contact with Plaintiff's alleged trafficker, the parties must first meet and confer. If no agreement is reached, Defendant may file a motion seeking an order from the Court in which it will explain the necessity of the disclosure."); *M. L. v. Craigslist Inc.*, 2020 U.S. Dist. LEXIS 175472, at *5 (affirming modification of protective order to provide that disclosure of the plaintiff's identity to her traffickers or their associates was warranted "only if the party requests and obtains a Court order before making any disclosure."); *V.G. v. G6 Hosp.*, LLC, No. 1:19-CV-1520, 2021 U.S. Dist. LEXIS 252867, at *25 (N.D.N.Y. 2021) (requiring court authorization and notice to plaintiff before contacting plaintiff's traffickers or their associates); *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-cv-00871, 2023 U.S. Dist. LEXIS 172379, at *4 (N.D. Ohio 2023) (requiring defendants to seek leave from court and give reasons before providing plaintiff's identity to her traffickers).

guard. Moreover, this notice requirement poses no significant obstacle to Defendants' effective preparation of a defense.

Additionally, the absolute bar on disclosure of T.S.'s current location is a necessary safety precaution that poses no prejudice to Defendants' ability to engage in legitimate investigation and preparation of their case.

### V. Federal and State Law Recognize a Victims' Rights to Protection from Perpetrators.

Various federal and state laws recognize a victim's right to "reasonable protection" from the perpetrator. *See, e.g.,* 18 U.S.C.A. § 3771 (a)(1) (crime victims have the "right to be reasonably protected from the accused"); Mo. Const. art. I, § 32(6) (crime victims have a "right to reasonable protection from the defendant or any person acting on behalf of the defendant"). Texas requires criminal courts to apply "safeguards" to "minimize the victim's contact with the offender and the offender's relatives and witnesses, before and during court proceedings." Texas Code of Crim. Proc. Art. 56.02(a)(8). *See also* Texas Code of Crim. Proc. Art. 56.02(3) ("Victims of crime have the right to adequate protection from harm and threats of harm arising from cooperation with prosecution efforts."). The state of Washington recognizes the likelihood of repeated harassment and intimidation suffered by survivors of human trafficking and provides for the issuance of no contact orders. Wash. Rev. Code. Ann. § 9A.40.104.

Other jurisdictions permit crime victims to refuse defendants' discovery requests: "Arizona, California, and Oregon . . . provide victims with an express right to refuse an interview, deposition, or other discovery request by the defendant or another acting on the defendant's behalf."[6] The Arizona Court of Appeals has extended such protections to civil cases. *State v. Lee*,

[6] National Crime Victim Law Institute, "Protecting Crime Victims From Discovery Requests in Civil Proceedings During the Pendency of a Related Criminal Case," p.8 n.13, https://law.lclark.edu/live/files/15659- protecting-crime

245 P.3d 919, 923-24 (Ariz. Ct. App. 2011) ("We see no reason not to apply that principle to a parallel civil proceeding in which the subject of the proposed deposition is the criminal offense committed against that victim").

As such, both state and federal crime victims' rights exist despite criminal defendants' competing **constitutional** rights, including the right to confront witnesses against them. *See* U.S. Const. amend. VI. In this case, no such constitutional rights are implicated. Moreover, as acknowledged by courts and legislatures across the country, the risk of harm or harassment should Plaintiff's trafficker learn of her accusations are high. Thus, the Court should adopt the Proposed Protective Order, which appropriately balances the interests of the parties and includes protections similar to those that other courts have adopted in other TVPRA cases.

## CONCLUSION

Plaintiff is attempting to overcome the trauma she endured while being trafficked at Defendants' hotel while seeking to hold those accountable for her injuries. The language in Plaintiff's protective order properly balances Defendants' need to fully investigate against her privacy and safety concerns. Any burden on Defendants is not too great considering the grave physical, mental, and psychological harm Plaintiff could suffer from her trafficker if her identity becomes known to him and the harm she would suffer if protected, sensitive information is further disseminated. "Any 'balancing' of interests should favor the safety of the victims and access to the courts over those alleged to have participated in the harm. Otherwise, the victims who have come forward risk their safety and reputation again, while remaining victims will refuse to trust a system that has failed to protect them in the past." Ex. A, at 7.

For these reasons, the Court should grant T.S.'s motion, allow her to proceed under

---

victims-from-discovery-requests (citing Ariz. Const.art. II, § 2.1(A)(5); Cal. Const. art. 1, § 28(b)(5); Or. Const. art. I, § 42(1)(c)).

pseudonym, and enter the Proposed Protective Order.

Respectfully submitted,

**SIEBEN CAREY, P.A.**
901 Marquette Avenue, Ste. 500
Minneapolis, MN 55402
Phone: 612/333-9762
jeffrey.montpetit@knowyourrights.com

/s/ Jeffrey Montpetit
By: ______________________________
Jeffrey M. Montpetit (SBN 0291249)

**PROVOST ☆ UMPHREY LAW FIRM, L.L.P.**
Darren L. Brown, TX
Bryan O. Blevins, Jr., TX SBN 02487300
350 Pine Street, Ste. 1100
Beaumont, TX 77701
(409) 835-6000 Telephone
dbrown@pulf.com
bblevins@pulf.com

/s/ Darren Brown
By: ______________________________
Darren L. Brown (TX SBN 03108350)

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

Plaintiff's counsel has attempted to confer with Counsel for Defendants without the necessity of court intervention. However, Counsel for Defendant, Wyndham has not responded to email or phone call. Counsel for Defendant, Sarah Hospitality stated his position will be the same as Wyndham.

*/s/ Darren Brown*__________
Darren Brown

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of June 2024, a true and correct copy of the foregoing was served via the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Darren Brown*__________
Darren Brown