**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

T.S.,

Plaintiff,

v.

Wyndham Hotels & Resorts, Inc, f/k/a Wyndham Worldwide Corporation, d/b/a Super 8 Hotel; Sarah Hospitality, Inc., d/b/a Super 8 Brooklyn Center; Wyndham Hotel Group, LLC; and Super 8 Worldwide, Inc.,

Defendants.

Case No. 23-cv-2530 (PJS/ECW)

**ORDER**

---

This case is before the Court on Plaintiff T.S.'s Motion to Proceed Under Pseudonym and for Protective Order. (Dkt. 52.) The Court sets forth its ruling on the disputed issues below and issues a Protective Order governing discovery in this case contemporaneously with this Order.

## I. BACKGROUND

Plaintiff T.S. filed her Motion to Proceed Under Pseudonym and for Protective Order ("the Motion") on June 25, 2024. (Dkt. 52.) Defendants Wyndham Hotels & Resorts, Inc.; Wyndham Hotel Group, LLC; and Super 8 Worldwide, Inc. (collectively, "the Wyndham Defendants") filed an opposition and a Proposed Protective Order with proposed modifications to Plaintiff's Proposed Protective Order on July 2, 2024. (Dkts. 55, 56.) Defendant Sarah Hospitality, Inc. did not file an opposition or Proposed Protective Order.

The Court held a telephone status conference on the Motion on July 25, 2024 to advise the parties of the Court's preliminary thoughts as to the Motion and allow them to make responsive arguments. (*See* Dkt. 60 (minute entry).) At the conclusion of the status conference, the Court ordered the parties "to meet and confer regarding the disputes discussed during the conference and to file a single proposed protective order, prominently identifying any remaining disputes, by 6 pm central on Monday, August 5, 2024." (*Id.*) The Court's expectation was that the parties would narrow their disputes based on the conference and present a single proposed protective order reflecting their discussions and presenting the remaining disputes for the Court's decision.

On August 5, 2024, at 5:40 pm, T.S. filed a Proposed Protective Order with a cover letter stating:

> Following our hearing of July 25, 2024, I reached out to Erica H. MacDonald, Defense Counsel for the Wyndham entities, by emails of July 25, 2024 and August 2, 2024 to discuss the proposed Protective Order. To date, I have not received a response with respect to those communications. As such, Plaintiff is submitting its proposed protective order in the same form as that discussed at the hearing with two modifications. As indicated during the hearing, Plaintiffs do not oppose the addition of a Highly Confidential Section. Wyndham's proposed language has been inserted as Section III.E. I also have revised the trafficker associates language at Section III.C.xv to read "The Plaintiff's trafficker and/or the known associates of the trafficker" to provide some additional clarity to that provision. Otherwise, I believe the order is substantially consistent with the Court's thoughts expressed during the hearing.

(Dkt. 61-1.)

Although the Wyndham Defendants and Sarah Hospitality did not meet and confer with T.S. as directed by the Court, the Wyndham Defendants did file a Supplemental Brief in Opposition to Plaintiff's Motion for Protective Order on August 5, 2024. (Dkt.

62.) The Wyndham Defendants filed their supplemental brief at 8:34 pm, over 2 hours after the 6:00 pm deadline. (*See id.*) They did not explain their late filing or failure to comply with the Order directing the parties to meet and confer and file a single proposed protective order identifying the remaining disputes. The Wyndham Defendants' August 5 brief is basically non-responsive to the compromises proposed by Plaintiff's counsel, and consequently not particularly helpful to resolution of the remaining disputes. Notwithstanding these deficiencies, and although their conduct suggests they do not believe the disputed issues are actually that important, the Court has considered the Wyndham Defendants' substantive arguments in connection with the Motion. All Defendants and their counsel are cautioned that any future failures to comply with the Court's Orders or failure to meet and confer as required by the Rules or any Order are likely to result in sanctions.

## II. DISCUSSION

The Court addresses the requests in the Motion below.

### A. Proceeding Pseudonymously for Pretrial Proceedings and Public Filings

T.S. seeks to proceed by pseudonym in pretrial proceedings and public filings. (Dkt. 52 at 8-9.) The Wyndham Defendants do not oppose this request, although they "expressly reserve the right to oppose any request by Plaintiff to proceed anonymously during trial." (Dkt. 55 at 3 & n.1.)

The Eighth Circuit recently held that "a party may proceed under a fictitious name only in those limited circumstances where the party's need for anonymity outweighs countervailing interests in full disclosure" and noted that "courts have allowed plaintiffs

to use fictitious names to protect the privacy of vulnerable parties, such as children and rape victims." *Cajune v. Indep. Sch. Dist. 194*, 105 F.4th 1070 (8th Cir. 2024). Relevant factors weighing in favor of pseudonymity include whether (1) the party seeking anonymity is challenging government activity; (2) whether identification of the party threatened to reveal information of a sensitive and highly personal nature; (3) whether a party would be required, absent anonymity, to admit an intention to engage in illegal conduct, thereby risking criminal prosecution; and (4) whether there is a danger of retaliation, which "is 'often a compelling ground' in favor of anonymity." *Id.* at 1077 (quoting *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004)). "Factors that weigh against party anonymity include whether the party's requested anonymity poses a unique threat of fundamental unfairness to the defendant, whether the public's interest in the case is furthered by requiring that the litigants disclose their identities, and whether there exist alternative mechanisms that could protect the confidentiality of the litigants." *Id.* (cleaned up).

Here, identifying T.S., a victim of sex trafficking, would reveal information of a sensitive and highly personal nature to T.S. and could create a danger of retaliation by those who trafficked her or their associates; the Wyndham Defendants have not argued that allowing T.S. to proceed under a pseudonym for pretrial proceedings and public filings would pose a threat of fundamental unfairness to them (and in fact do not object to this request); and the Court sees minimal to no public interest in identifying T.S.'s identity for purposes of pretrial proceedings and public filings. *See Doe 1 v. Lazzaro*, No. 21-CV-1985 (JWB/DJF), 2023 WL 4545066, at *1-2 (D. Minn. July 14, 2023)

(granting motion allowing Plaintiffs (parents and child) to proceed under pseudonym when suing "Defendant for sex trafficking then 16-year-old JA-Minor Doe 1"). "And to the extent there is a material public interest in the identity of an individual subject to child abuse as [a] minor, that interest is substantially outweighed by Plaintiffs' interests in protecting [her] privacy and protecting her from additional harm." *Id.* at *2 (footnote omitted). No party has identified, and the Court does not see, any alternative mechanism to adequately protect T.S.'s interests in this matter. *See id.* Based on these factors, the Court grants the Motion insofar as Plaintiff may proceed under a pseudonym for purposes of pretrial proceedings and public fillings in this matter.[1]

**B. Protective Order Language**

Before turning to the parties' specific disputes, the Court sets forth the general standards governing entry of a protective order under Rule 26(c). Federal Rule of Civil Procedure 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required" because "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Rule 26(c)(1) further provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, as relevant here, "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . ." Fed. R. Civ. P. 26(c)(1)(D).

[1] The Court defers to the District Judge assigned to this case as to whether T.S. may proceed pseudonymously for purposes of any trial in this matter.

With these principles in mind, the Court addresses the parties' disputes below.

***First***, the Court begins with the dispute over the definition of "Plaintiff's Identity." Plaintiff's August 5, 2024 Proposed Protective Order defines "Plaintiff's Identity" as meaning:

> the Plaintiff's personally identifiable information, including: (i) names and aliases used by Plaintiff at any time; (ii) Plaintiff's date of birth; (iii) Plaintiff's social security number; (iv) Plaintiff's current and prior residential addresses; (v) Plaintiff's phone numbers and social media or online user account names; (vi) Plaintiff's likeness; and (vii) the names of Plaintiff's biological or adoptive parents, and biological siblings.

(Dkt. 61 at 1-2 (Proposed Protective Order at Section 1.D).)

The Wyndham Defendants challenge two aspects of this definition as making it "overly broad." (Dkt. 55 at 6.) They argue that the use of "including" renders the definition indefinite because it suggests that the definition "includes information other than what is specifically described." (*Id.*) In their August 5 supplemental brief, the Wyndham Defendants ask: "Does hair color fall within the scope of Court-ordered protection?" and answer their own question with: "Ok Under the plain language of Plaintiff's proposed order, it does." (Dkt. 62 at 2.) According to the Wyndham Defendants, T.S. "seeks to impede the Wyndham Defendants' investigation of her claims" by proposing this definition of "Plaintiff's Identity." (*Id.*)

The Wyndham Defendants' arguments that T.S. seeks this protection for purposes of impeding their investigation rather than protecting her privacy interests (as well as against retaliation) is unsupported and a dubious rhetorical flourish. As to the use of "including," the Court notes that the Wyndham Defendants' version of the Proposed

Protective Order uses "including" in the definition of "Confidential Information," in particular:

> "Confidential Information" means Discovery Material (regardless of how it is generated, stored or maintained) or tangible things that contain: (i) **potentially sensitive personal identifying or financial information, <u>including but not limited to</u>, dates of birth, social security numbers, phone numbers, employment histories, or credit card information**; (ii) any trade secret, confidential research, development, commercial, or competitively sensitive information, as such terms are used in Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure.; and (iii) any material prohibited from disclosure by statute or Court Order but is nonetheless discoverable.

(Dkt. 56 § I.E (emphasis added).)

If the Wyndham Defendants are able to determine what falls within the scope of "potentially sensitive personal identifying or financial information" for purposes of "Confidential Information" notwithstanding that definition's use of "including but not limited to," the Court trusts that they will be able to navigate similar language in the definition of "Plaintiff's Identity." If, as the case proceeds, the Wyndham Defendants have a genuine, real question about whether certain information constitutes "Plaintiff's Identity," they should meet and confer with T.S.'s counsel to discuss their concerns, and if they cannot reach agreement, may seek relief as to that concern by motion or through informal dispute resolution.

The Wyndham Defendants also argue that inclusion of "aliases" and "social media or online user account names" "is unnecessary because there is no reason this information would disclose Plaintiff's identity unless it includes her name or other information already covered under the proposed definition for 'Plaintiff's Identity,' in which case this

language is redundant."[2] (Dkt. 55 at 6.) As the Court stated during the July 25 conference, the Court has concerns that persons could "dox"[3] T.S. based on her social media names even if they do not include her name or other information already covered by the definition of "Plaintiff's Identity." Further, the word "[a]lias" is defined as "[a]n assumed or additional name that a person has used or is known by." *Alias*, Black's Law Dictionary (12th ed. 2024). While there may be overlap with social media or online user account names, the Court is not persuaded that they are completely duplicative—and even if they are, the Wyndham Defendants have not identified any harm caused by including both "aliases" and "social media or online user account names." Given the

---

[2] The Wyndham Defendants assert that T.S. "seeks protection over all social media aliases, but she refuses to identify them." (Dkt. 62 at 2 n.1.) This is an unsupported assertion, and rather questionable given that T.S.'s version of the Proposed Protective Order states that she will provide her "full name, maiden name, alias names used at any time, and date of birth" within three days after the Court enters a Protective Order (Dkt. 61 § VI.B, and also states:

> Nothing in this Order shall prevent a Party from requesting from Plaintiff during the course of discovery any other information that is linked or linkable to the true identity of Plaintiff or her trafficker(s) or her/their associates, such as, but not limited to, any medical, educational, financial, employment, or other information. Relatedly, nothing in this Order relieves Plaintiff of the obligation to produce any discoverable documents or information that Plaintiff would otherwise be required to produce in the normal course of discovery.

(*Id.*)

If the Wyndham Defendants had evidence of T.S.'s refusal, they should have provided it to the Court, so the Court could resolve that issue.

[3] "Dox" means "to publicly identify or publish private information about (someone) especially as a form of punishment or revenge." *Dox*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/dox (last visited August 28, 2024).

privacy interests at stake, and the absence of any identified harm to the Wyndham Defendants, the Court adopts the Plaintiff's definition of "Plaintiff's Identity."

***Second***, the Wyndham Defendants take issue with Plaintiff's proposed language in Section III.C.iii-v of the Proposed Protective Order limiting access to "Plaintiff's Identity" information to "Former Employees, officers, contractors and representatives of the Parties"; "Current and former contractors of the Parties"; and "Any witness who Counsel for a Party" "in good faith believes may be called to testify at trial or deposition in this action and who execute the Acknowledgment and Agreement to Be Bound attached to this Protective Order as Exhibit A." (*See* Dkt. 55 at 3 (raising dispute); Dkt. 54 § III.C.iii-v (disputed section in T.S.'s June 25, 2024 version); Dkt. 61 § III.C.iii-v (disputed sections in T.S.'s August 5, 2024 version).) The Wyndham Defendants state they "cannot know whether someone may be a trial witness before they talk to that person" and argue that "the requirement that any person agree to an undertaking before providing information will significantly inhibit the investigation of Plaintiff's claims; many (if not most) witnesses in cases like these are reluctant to sign an official court document presented by an unfamiliar attorney." (Dkt. 55 at 3.) They ask the Court not to impose the requirement that these persons sign the Acknowledgement and Agreement to Be Bound attached as Exhibit A to the Proposed Protective Order. (*Id.* at 4.)

The Court recognizes that courts are divided on whether these types of provisions should be included in protective orders in similar cases. As one court explained when requiring such a provision:

> Provisions such as these are commonplace in cases involving plaintiffs who are proceeding anonymously due to the sensitive subject matter of the litigation.
>
> The Court has acknowledged the importance of allowing Plaintiff to remain anonymous and to protect her—to the greatest extent possible while still considering Defendant's needs—from harm by her alleged trafficker. This provision balances Defendant's need to fully investigate Plaintiff's claims against Plaintiff's safety and well being and the sensitivity of the information involved in this case.
>
> If a witness refuses to sign an agreement ensuring that protected information will not be further disseminated, the Court has little confidence that the witness will keep Plaintiff's identity, her relationship to her sex trafficker, and her involvement in this litigation confidential. Such information must be protected, and its dissemination must be limited.

*A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19CV120, 2020 WL 8639346, at *2 (E.D. Va. Sept. 21, 2020) (citation omitted).

Similarly, in *J.C. v. Choice Hotels International, Inc.*, the court rejected the argument that "demanding a witness sign an agreement to be bound by a protective order before receiving J.C.'s true identity would have 'a significant chilling effect on Defendants' ability to interview potential witnesses' because the threat of penalty of perjury and exposure to sanctions 'is a poor way to begin a conversation with critical fact witnesses.'" No. 20-CV-00155-WHO, 2021 WL 1146406, at *6 (N.D. Cal. Mar. 4, 2021) (collecting Trafficking Victims Protection Reauthorization Act cases where similar provisions had been included in protective orders). The *J.C.* court cited *A.D.* approvingly and explained: "I agree with the reasoning in *A.D.* If a witness refuses to sign an agreement ensuring that protected information will not be further disseminated, I would

have little confidence that the witnesses will keep J.C.'s identity, her relationship to her sex trafficker, and her involvement in this litigation confidential." *Id.* (cleaned up).

The Court has reviewed the cases cited by the Wyndham Defendants where courts found similar provisions to significantly hamper defendants' investigation in these types of cases, as well as the Wyndham Defendants' argument that they "cannot know whether someone may be a trial witness before they talk to that person." (Dkt. 55 at 3-4.) The provisions in question do not require Defendants to "know" whether someone may be a witness before counsel talks to them; they require Defendants to not disclose Plaintiff's Identity unless to persons whom counsel "in good faith believe[] may be called to testify at trial or deposition in this action" and after they sign an Acknowledgement. (Dkt. 61 § III.C.iii-v (disputed sections in T.S.'s August 5, 2024 version).) This does not prevent counsel from talking to potential witnesses; it requires them to delay disclosing Plaintiff's Identity until certain requirements are met. And given the Proposed Protective Order submitted by the Wyndham Defendants require such "good faith" belief that current employees "may be helpful or informative in investigating or litigating any claims or defenses" (Dkt. III.C.i), the Court is not persuaded it is unworkable or unreasonable for them to exercise similar judgment with respect to former employees, current and former contractors, and other witnesses.

In their August 5 supplemental brief, the Wyndham Defendants argued: "Another example of impeding investigatory activities is the limitation that information can only be disclosed to witnesses if such disclosure is 'necessary' or 'needed' to litigate this case," because "counsel cannot possibly know whether a conversation with a witness will result

in 'necessary' information until the conversation occurs." (Dkt. 62 at 3 (citing "Plaintiff's proposed order at IIIC").) Their specific concern is unclear because T.S.'s proposed language relating to witnesses does not use the words "necessary" or "needed." (Dkt. 61 § III.C.v.) To the extent the Wyndham Defendants are challenging the use of those terms in other parts of Section III.C, their own Proposed Protective Order contains such "necessary" and "needed" language in that Section (and Section III.B). (Dkt. 56 § III.B.xii ("Government agencies and agency personnel, but only to the extent that the disclosure of Confidential Information is **necessary to litigate** any claims or defenses or to comply with any obligations or requirements"); *id.* § III.C.vi ("Counsel for the Parties, retained specifically for this action and employees, agents, and representatives of counsel **as needed** to litigate any claims or defenses"); *id.* § III.C.vii ("Adjusters and claims professionals of an insurer of a Party and counsel for such insurer of a Party **as needed** to litigate any claims or defenses and who execute the Acknowledgment and Agreement to Be Bound attached to this Protective Order as Exhibit A") (emphases added).) This argument does not persuade the Court that it should reject T.S.'s proposed language because T.S. is trying to "impede" the Wyndham Defendants' investigation.

The Court understands the Wyndham Defendants' concerns that potential witnesses may not wish to sign the Acknowledgement. But given the privacy interests at stake, and the uncertainty of whether the Acknowledgement actually presents an impediment, the Court finds good cause to require execution of an Acknowledgement as set forth in Section III.C.iii-v of the August 5 Proposed Protective Order filed by T.S.

The Court is open to revisiting this requirement should Defendants demonstrate they are having difficulties with witnesses.

***Third***, Defendants want to modify the scope of the provision in the protective order that "would require the Wyndham Defendants to provide '7-day notice to the Plaintiff of the intention to contact [Plaintiff's] trafficker or the trafficker's associates.'" (Dkt. 55 at 5.) The Wyndham Defendants originally argued:

> But the Wyndham Defendants cannot know the identity of Plaintiff's alleged trafficker or anyone who may have worked in concert with a trafficker until *after* a conversation occurs. Plaintiff's approach unreasonably places the Wyndham Defendants at risk of unwittingly violating the protective order and, again, inhibits the Wyndham Defendants from investigating Plaintiff's claims. While the Wyndham Defendants are not opposed to providing notice before contacting individuals ***whom Plaintiff has identified*** as her trafficker or the trafficker's associates or whom Plaintiff demonstrates pose a risk to her well-being, Plaintiff has refused to identify either group.

(Dkt. 55 at 4.)

During the July 25 conference, T.S.'s counsel proposed using the language "traffickers and trafficker's associates identified by the Plaintiff or otherwise known to the Defendants" to resolve the Wyndham Defendants' concerns and because Defendants might obtain knowledge of an associate relationship through their investigation that Plaintiff may have forgotten or not known.[4] The Court directed the parties to meet and confer in view of that proposal—but the meet-and-confer did not happen. The Court finds the language proposed by T.S.'s counsel to be a reasonable compromise and adopts the following language for III.C.xv:

---

[4] This statement belies the Wyndham Defendants' post-conference statement that Plaintiff "refuses to identify who these people are." (Dkt. 62 at 2.)

> The Plaintiff's trafficker and/or the trafficker's associates identified by the Plaintiff or otherwise known to the Defendants, but only after providing 7-day notice to the Plaintiff of the intention to contact the trafficker and/or the trafficker's associates identified by the Plaintiff or otherwise known to the Defendants to permit Plaintiff to seek further protection from the Court should it be necessary. The Plaintiff's Identity will be revealed to the trafficker and/or the trafficker's associates identified by the Plaintiff or otherwise known to the Defendants only to the extent necessary to assist in their recollection of Plaintiff and her trafficking history. Plaintiff's and Plaintiff's family's physical location will never be disclosed to Plaintiff's trafficker and/or the trafficker's associates identified by the Plaintiff or otherwise known to the Defendants; and

The Court finds good cause to adopt this language, as it addresses T.S.'s concerns about privacy and retaliation but also addresses the Wyndham Defendants' concerns about "unknown" associates (and is consistent with the cases cited approvingly by Defendants on pages 4-5 of their July 2, 2024 brief).

***Fourth***, the Wyndham Defendants seek a representation in the protective order supporting the basis or "good cause" for the protections concerning the disclosure of T.S.'s identity. (Dkt. 55 at 5-6.) They argue: "Some plaintiffs asserting TVPRA claims maintain a public profile relating to their trafficking, and while that does not mean they are not entitled to any reasonable protections, it is relevant to evaluating what may be reasonable." (*Id.* at 5.) Here, the Proposed Protective Orders filed by Plaintiff before the Wyndham Defendants made that argument (and after) both contained this language:

> Plaintiff represents that, consistent with her privacy concerns, it is her intent not to disclose her identity or image in relation to the status of this matter or the underlying allegations on social media or with any media outlet while the case is pending. The identity and image protections provided to Plaintiff in this Protective Order will become inapplicable if Plaintiff does disclose her identity or image in relation to the underlying allegations on social media or with any media outlet while the case is pending.

(Dkt. 54 § III.D; Dkt. 61 § III.D.)

This more than adequately addresses the Wyndham Defendants' "public profile" argument. Further, the law does not require the Protective Order itself to state the basis for "good cause," and the Court sees no reason to require Plaintiff to do so here.

***Fifth***, the Wyndham Defendants ask that the Protective Order not include the language in Section XI.C making the Protective Order binding on "the Parties, their Outside Counsel, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control" because it is redundant. (Dkt. 55 at 6.) They argue: "This provision is redundant because the parties and their counsel are bound by any order entered in this case, and other persons intended to be bound by the protective order will sign the binding acknowledgement." (*Id.*) The Court is not persuaded this provision is entirely redundant given that the current proposal permits disclosure of Plaintiff's Identity to Defendants' current employees without execution of the Acknowledgment. (Dkt. 61 § III.C.i.) And even if it is redundant, the Wyndham Defendants do not identify any harm to their ability to investigate and defend against T.S.'s claims in this case arising from the redundancy. Given the interests at stake for T.S., and the lack of any articulated harm to Defendants, the Court will include this language in the Protective Order.

## III. ORDER

For the reasons stated above, and based upon all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff T.S.'s Motion to Proceed Under Pseudonym and for Protective Order (Dkt. 52) is **GRANTED** as set forth above.

2. A Protective Order consistent with the Court's ruling will issue contemporaneously with this Order.

Dated: August 28, 2024

*s/Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge